UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MATTHEW J. NASUTI,                          )
                                            )
                        Plaintiff           )
                                            )
                                            )
            v.                              )   Civil Action No. 09-30183-MAP
                                            )
CATHERINE D. KIMBALL,                       )
JOHN TARLTON OLIVIER and                    )
VALERIE S. WILLARD,                         )
                        Defendants          )


REPORT AND RECOMMENDATION WITH REGARD TO
DEFENDANTS' MOTION TO DISMISS (Document No. 12)
February 1, 2010

NEIMAN, M.J.

    Matthew Nasuti ("Plaintiff"), a Massachusetts resident proceeding *pro se*, seeks

relief for an alleged instance of defamation and violation of due process by John Olivier

("Olivier") and Valerie Willard ("Willard") (together "Defendants"), both of whom are

Louisiana citizens and employees of the Louisiana Supreme Court.  Defendants have

filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), (3) and (6) alleging lack

of personal jurisdiction, improper venue, and failure to state claims upon which relief

can be granted.  For the reasons stated below, the court will recommend that

Defendants' motion be allowed on personal jurisdiction grounds or, alternatively, for

failing to state claims upon which relief can be granted.

## I.  STANDARD OF REVIEW

    When faced with a Rule 12(b)(2) motion to dismiss for lack of personal

jurisdiction, the plaintiff has the burden of proving that jurisdiction lies with the court. *Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar. Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998). In particular, the plaintiff must show that the state's long-arm statute grants jurisdiction and that the exercise of jurisdiction is consistent with the Due Process Clause of the United States Constitution. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir. 2002). To make a *"prima facie"* showing of personal jurisdiction, the plaintiff must provide evidence that, if credited as true, is sufficient "to support findings of all facts essential to personal jurisdiction." *Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671, 675 (1st Cir. 1992). Therefore, in order "[t]o defeat a motion to dismiss . . . the plaintiff must make the showing as to every fact required to satisfy both the forum's long-arm statute and the due process clause of the Constitution." *Id.* (citation and internal quotation marks omitted).

In some contrast, a Rule 12(b)(6) motion to dismiss for failure to state a claim requires the court to accept the allegations of the complaint as true, drawing all reasonable inferences in favor of the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Coyne v. City of Somerville*, 972 F.2d 440, 443 (1st Cir. 1992). In addition, *pro se* pleadings must be construed liberally. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Instituto De Educacion Universal Corp. v. United States Dep't of Educ.*, 209 F.3d 18, 23 (1st Cir. 2000). The Supreme Court has stated, however, that only a complaint that "state[s] a claim to relief that is plausible on its face" will survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Recently, the Court explained that "[a] claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## II.  BACKGROUND

For present purposes, the following background comes directly from Plaintiff's complaint.  The court has also considered a news release from the Louisiana Supreme Court's official website, within which the allegedly defamatory statement was made. *See Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33-34 (1st Cir. 2001) (allowing a court to consider with regard to a motion to dismiss "documents the authenticity of which are not disputed by the parties; . . . official public records; . . . documents central to plaintiff's claim; or . . . documents sufficiently referred to in the complaint") (citations and internal quotation marks omitted); *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988) ("Although there is no requirement that the pleader attach a copy of the writing on which his action or defense is based, when plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading.") (citations, alterations and internal quotation marks omitted).[1]

---

[1]  While Plaintiff challenges the "official" status of the website, he offers no evidence that the website printout provided by Defendants is not adequate evidence thereof.  For its part, the court has looked at the news release on its own (CLERK OF SUPREME COURT OF LOUISIANA, NEWS RELEASE # 052 (2004), *available at* http://www.lasc.org/news_releases/2004/2004-52.asp (last visited February 1, 2010)), and finds Defendants' printout to be entirely accurate, exactly as Plaintiff described and, hence, sufficiently a part of Plaintiff's causes of action so as to be properly considered with respect to Defendants' motion to dismiss.

At one time, Plaintiff was a member of the Louisiana bar.  (Compl. ¶ 8.)  In 2004, however, he submitted a request for voluntary resignation from the practice of law to the Louisiana Supreme Court.  (*Id.*)  The Louisiana Supreme Court, in response to Plaintiff's request and other matters, posted "NEWS RELEASE # 052" on its website.  In pertinent part, the news release stated as follows:

> FROM: CLERK OF SUPREME COURT OF LOUISIANA
>
> On the **16th day of June, 2004**, the following action was taken by the [Supreme Court] of Louisiana in the case(s) listed below:
>
>      . . . .
>
> **WRIT APPLICATION(S) GRANTED WITH ORDER:**
>
> 2004-CC-1004      GOLDIE L. LANCLOS v. EDWARD R. LAMB ([In re] Lafayette) KIMBALL, J., would deny the writ. JOHNSON, J., would deny the writ. TRAYLOR, J., would deny the writ.
>
> **RESIGNATION(S) ACCEPTED; SEE ORDER:**
>
> 2004-OB-1213      IN RE: MATTHEW J. NASUTI
>
> **PERMANENT DISBARMENT ORDERED; SEE PER CURIAM:**
>
> 2004-B-0239      IN RE: ARCHIE L. JEFFERSON

(Mem. of Reasons in Supp. of F.R.Civ.P. 12(b)(2), (3) and (6) Motions, Ex. A at 1-3.)

In 2009, Plaintiff conducted a Google search of his name with the following result "Matthew J. Nasuti Permanent Disbarment Ordered."  (Compl. ¶ 9).  The search engine generated this response, Plaintiff alleges, as a direct result of the formatting on

the Louisiana Supreme Court website.  (*Id.* ¶¶ 9-10).[2]  Plaintiff claims that, thereafter,

he repeatedly contacted Defendants asking them to redraft the press release, remove

his name from the website, and publish an apology or a retraction.  (*Id.* ¶ 10).

According to Plaintiff, Defendants refused, asserting that the search engine was

"misinterpreting the press release."  (*Id.*)

In October of 2009, Plaintiff was contacted by a reporter who had also done a

Google search of Plaintiff's name.  (*Id.* ¶ 12.)  Upon seeing the search result, the

reporter was concerned that Plaintiff had been involved in misconduct which had led to

his disbarment in Louisiana.  (*Id.*)  Plaintiff asserts that this incident is indicative of the

effect that the Google search result may have had on his reputation.  (*Id.*)  He also

fears that the search result may have led to numerous instances where he was refused

employment or denied credit or where his reputation was otherwise discounted.  (*Id.*)

On October 29, 2009, Plaintiff filed the instant complaint containing two causes

of action, one for defamation under Massachusetts common law and one under 42

U.S.C. § 1983 ("section 1983") for deprivation of his "clearly established constitutional

property right and a liberty right to his reputation, honor, good name, integrity and to

gainful employment."  (*Id.* ¶¶ 15, 20-21.)  The complaint initially targeted Catherine T.

Kimball, Chief Justice of the Louisiana Supreme Court, in addition to Olivier, that

court's Clerk, and Willard, its Public Information Officer.

---

[2]  In the news release, the name "MATTHEW J. NASUTI," although clearly in
the category of "RESIGNATION(S) ACCEPTED," immediately precedes the words
"PERMANENT DISBARMENT ORDERED."

Together with his complaint, Plaintiff filed a motion to proceed *in forma pauperis*, which was granted.  Pursuant to the *in forma pauperis* statute, however, this court reviewed the complaint and, on November 6, 2009, recommended summary dismissal of the claims against Chief Justice Kimball.  In its Report and Recommendation (which was thereafter adopted by District Judge Michael A. Ponsor), the court found that Chief Justice Kimball was protected from suit by the doctrine of judicial immunity and suggested that Olivier and Willard may be protected by quasi-judicial immunity.  (Rep. and Rec. at 2-3.)  The court noted, however, that the burden was on the remaining defendants to seek dismissal on the basis of quasi-judicial immunity and/or any other permissible ground.  (*Id.* at 3.  See also Judge Ponsor's Jan. 7, 2010 Mem. and Order at 3.)  As indicated, the two remaining Defendants have now filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2),(3), and (6), asserting lack of personal jurisdiction, improper venue, and failure to state claims upon which relief may be granted.

## III. DISCUSSION

The court will separately consider Defendants' personal jurisdiction (Rule 12(b)(2)) and merits (Rule 12(b)(6)) arguments and recommend that the motion be allowed on either basis.  Accordingly, the court finds it unnecessary to address Defendants' alternative venue (Rule 12(b)(3)) argument.[3]

---

[3]   In addition, the court finds it unnecessary to address at length Plaintiff's assertion that Defendants' motion should be denied because they failed to engage in a pre-motion conference under Rule 7.1(a)(2) of the Local Rules of the Unted States District Court for the District of Massachusetts.  Given the nature of the motion, the court believes that this failure to abide by the rule, if failure it was, was inconsequential and that mandating compliance would inappropriately delay addressing the underlying issues.  In any event, Plaintiff provides no authority for denying a motion to dismiss

A. Personal Jurisdiction

As indicated, Plaintiff must show both that the Massachusetts long-arm statute creates personal jurisdiction over Defendants and that the exercise of such jurisdiction comports with principles of due process.  *Daynard*, 290 F.3d at 52.  Defendants, while briefly addressing the Massachusetts long-arm statute, focus their arguments on due process concerns.  Because the court agrees with Defendants that due process requirements have not been met here, it does not reach the question of the state's long-arm statute which, in any event, Plaintiff has completely ignored.

Due process requires the court to find that it has either "specific" or "general" jurisdiction over a defendant.  *See generally Harlow v. Children's Hosp.*, 432 F.3d 50, 57 (1st Cir. 2005).  General jurisdiction may be found if a defendant has "continuous and systematic" contacts with Massachusetts, even though those contacts do not relate to the particular cause of action.  *See Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414-16 (1984).  Specific jurisdiction, on the other hand, may exist only if a defendant's contacts with the Commonwealth "arise out of" or "relate to" the plaintiff's particular causes of action.  *See Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir. 1995).  Here, since Plaintiff's complaint may be liberally construed as asserting both general and specific and jurisdiction over Defendants, the court considers each avenue in turn.  In the end, the court agrees with Defendants that Plaintiff has not met his burden of alleging facts sufficient to support either general or specific jurisdiction.

1. General Jurisdiction

---

simply because of a movant's failure to comply with the procedural prerequisite.

In this court's view, Plaintiff has alleged no facts which would tend to indicate "continuous and systematic" contacts by either defendant with Massachusetts. *See Helicopteros*, 466 U.S. at 414-16. At best, Plaintiff alleges that, as a resident of Massachusetts, he was able to access the Louisiana Supreme Court website. Under this theory, however, any individual associated with any entity that maintained a website which was not restricted to residents of a given state could be haled into court anywhere in the country. Obviously, such a result is untenable. As the Supreme Court has long expressed, due process requirements exist, in part, to give "a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Were mere accessibility by a forum state's citizenry sufficient to establish general jurisdiction it "would shred. . . constitutional assurances out of practical existence." *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000). Accordingly, the court believes, Plaintiff has not established general jurisdiction here.

2. <u>Specific Jurisdiction</u>

The court also believes that Plaintiff has not demonstrated specific jurisdiction over Defendants. The First Circuit uses a three-part test for determining such jurisdiction:

> <u>First</u>, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. <u>Second</u>, the defendant's in-state contacts must represent a

8

> purposeful availment of the privilege of conducting activities
> in the forum state, thereby invoking the benefits and
> protections of that state's laws and making the defendant's
> involuntary presence before the state's courts foreseeable.
> Third, the exercise of jurisdiction must, in light of the Gestalt
> factors, be reasonable.

*Sawtelle*, 70 F.3d at 1389 (emphasis added) (citing cases).  *See also United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 620-21 (1st Cir. 2001).  The court will address each part separately, mindful that "[c]entral to each step . . . are the contacts which are attributable to [D]efendant[s]."  *Sawtelle*, 70 F.3d at 1389.  In the end, the court concludes that Plaintiff has proven none of the elements.

a. <u>Relatedness</u>

The relatedness prong "serves the important function of focusing the court's attention on the nexus between a plaintiff's claim and the defendant's contacts with the forum."  *Id.*  Here, Plaintiff essentially asserts that any communication between himself, a citizen of the Massachusetts, and the Louisiana Supreme Court, via Google, is sufficient to meet the relatedness prong.  In support, Plaintiff argues both that Google is an "agent" of Defendants and that, by creating the news release, Defendants should have anticipated that the information communicated could have had an "effect" in Massachusetts.  Plaintiff further argues that Defendants' contact with Massachusetts was enhanced when they refused to change the website after having been notified of the effect that the news release was having on him in Massachusetts.  In the court's view, Plaintiff's relatedness arguments are unavailing.

As central support for his arguments, Plaintiff references *Blumenthal v. Drudge*,

992 F. Supp. 44 (D.D.C. 1998), and *Calder v. Jones*, 465 U.S. 783 (1984). These cases, however, are easily distinguishable since, in both, the *defendant* had been the one who had published the defamatory statement. Here, as Plaintiff's own allegations make clear, it was *Google* that made the statement that Plaintiff now alleges was defamatory. Further, Plaintiff's assertion to the contrary, Google was not an "agent" of Defendants because there is no plausible allegation that they exercised any control over that independent search engine. *See Marya v. Slakey*, 190 F. Supp. 2d 91, 103 (D. Mass. 2001) ("It is true that the right of control by the principal over the agent is an irreducible element of an agency relationship.") (citing *Restatement (Second) of Agency* §§ 1, 14). In short, the relatedness prong is not fulfilled because the litigation does not "directly arise out of" the forum-state activities. *Sawtelle*, 70 F.3d at 1389.

      b. Purposeful Availment

In order to support specific jurisdiction, Plaintiff must also demonstrate that Defendants "engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable." *Sawtelle*, 70 F.3d at 1391 (quoting *Rush v. Savchuk*, 444 U.S. 320, 329 (1980)). "The function of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state." *Id.* (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). As described, however, Defendants have not engaged in any such activities in Massachusetts.

To be sure, Plaintiff alleges that the publication of the news release on the Louisiana Supreme Court website constitutes a purposeful availment of this forum

because it was made available to Massachusetts residents via the internet.

Unfortunately for Plaintiff, however, the evolving caselaw in the area of internet-based

personal jurisdiction simply does not support that conclusion, particularly given the

apparent passive nature of the website.  *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,

952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (indicating that, in assessing purposeful

availment in website cases, courts typically look to the "nature and quality of

commercial activity that an entity conducts over the Internet").  *See also Cybersell, Inc.

v. Cybersell, Inc.*, 130 F.3d 414, 419-20 (9th Cir. 1997) (declining to find personal

jurisdiction because there was no indication that the defendant, a Florida corporation,

had encouraged Arizona residents to visit its website); *ICP Solar Techs., Inc. v. TAB

Consulting, Inc.*, 413 F. Supp. 2d 12, 18-19 (D.N.H. 2006) (holding that web-site

presence alone, without additional targeting, does not establish personal jurisdiction in

the forum); *Comer v. Comer*, 295 F. Supp. 2d 201, 209 (D. Mass. 2003) ("Neither the

United States Supreme Court nor, it appears, any court within this circuit has held that

a mere internet presence, without more, establishes personal jurisdiction.") (collecting

cases).

Moreover, both of the defamation cases upon which Plaintiff relies are easily

distinguishable.  There are no "plus-factors" at play.  *See Blumenthal*, 992 F. Supp. at

54-57 (finding personal jurisdiction in defamation case where there was both internet

publication and "plus-factors," *e.g.*, the defendant's travel to the forum (Washington,

D.C.) to promote his publication, his communication with forum residents who provided

him with gossip, and the fact that the subject matter of his publication, "The Drudge

Report," primarily concerned political gossip and rumor in the forum).  Nor is there any

indication whatsoever that Defendants intended their so-called "defamation" to be felt in

Massachusetts.  *See Noonan v. Winston Co.*, 902 F. Supp. 298, 305 (D. Mass. 1995)

(holding that "the victim of the defamatory statement must demonstrate that its author

*intended* the libel to be felt in the forum state") (emphasis in original), *aff'd*, 135 F.3d 85

(1st Cir. 1998).

Granted, Plaintiff also alleges that Defendants' refusal to remove his name from

the website, after having received his repeated demands to do so, was a "republication"

that was intentionally defamatory, thereby providing the necessary minimal contacts.  In

order to constitute a republication, however, Defendants would have needed to have

exercised control over the location where the defamatory statement occurred.  *See*

*Tacket v. General Motors Corp.*, 836 F.2d 1042, 1046 (7th Cir. 1987) (citing

*Restatement (Second) of Torts* § 577(2) (1977)).  Defendants, for all the reasons

described, had no such control over Google's search engine here.  Accordingly, in the

court's estimation, Plaintiff offers no persuasive argument as to purposeful availment.

c. <u>Reasonableness</u>

Since, in the court's opinion, Plaintiff has failed to meet his burden under the first

two prongs of the due process inquiry, it need not even address the third prong,

reasonableness.  *Sawtelle*, 70 F.3d at 1394 ("[F]ailure to demonstrate the necessary

minimum contacts eliminates the need even to reach the issue of reasonableness." );

*United Elec., Radio & Mach. Workers v. 103 Pleasant St. Corp.*, 960 F.2d 1080, 1091

n.11 (1st Cir. 1992) ("The Gestalt factors come into play only if the first two segments of

the test for specific jurisdiction have been fulfilled.").  Nonetheless, the court cannot fathom how personal jurisdiction over these two Louisiana court employees would be reasonable here.  Most of the witnesses, as well as all of the evidence, is located in Louisiana, and that state's courts clearly have an overriding interest, if any, in the actions alleged, Plaintiff's reliance on Massachusetts common law notwithstanding. Accordingly, the court will recommend that Defendants' motion to dismiss be allowed on personal jurisdiction grounds.

B.  Merits

Even assuming personal jurisdiction exists, Plaintiff, in the court's view, has failed to set forth sufficient factual allegations to support the merits of either his defamation or section 1983 claim.  Considering these causes of action in turn, the court concludes that both fail to state claims upon which relief can be granted.[4]

1.  Defamation

Plaintiff's defamation claim can be dealt with in short order.  First, the law.  In Massachusetts, defamation is "the publication, either orally or in writing, of a statement concerning the plaintiff which is false and causes damage to the plaintiff."  *Yohe v. Nugent*, 321 F.3d 35, 39 (1st Cir. 2003).  Typically, "a defamation plaintiff must prove not only that the statement[ was] defamatory, but also that [it was] false."  *Id.* at 40.

---

[4]  As suggested in this court's November 6, 2009 Report and Recommendation, Defendants also argue that they are entitled to quasi-judicial immunity.  *See, e.g.*, *Slotnick v. Garfinkle*, 632 F.2d 163, 166 (1st Cir. 1980).  *See also Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994); *Scruggs v. Moellering*, 870 F.2d 376, 377 (7th Cir. 1989). Because that argument has not been fully fleshed out and because the court recommends other bases for dismissal, it will not consider the immunity argument further.

Whether or not a statement is defamatory involves a threshold question -- "whether the statement is reasonably susceptible of a defamatory meaning" -- and that is a question of law for the court. *Foley v. Lowell Sun Publ'g Co.*, 533 N.E.2d 196, 197 (Mass. 1989). *See also Damon v. Moore*, 520 F.3d 98, 103-04 (1st Cir.) *cert. denied*, 129 S. Ct. 175 (2008). In order to assess whether a statement is reasonably susceptible of a defamatory meaning, the court must "examine the statement in its totality in the context in which it was uttered or published," that is, "[t]he court must consider all the words used, not just merely a particular phrase or sentence." *Albright v. Morton*, 321 F. Supp. 2d 130, 135 (D. Mass. 2004). Only where a statement is susceptible to both a defamatory and a non-defamatory meaning does it present a question of fact for the jury. *King v. Globe Newspaper Co.*, 512 N.E.2d 241, 249 (Mass. 1987).

Now, the facts. Here, the only statement that Defendants could potentially be responsible for is the one on the Louisiana Supreme Court website. That statement, taken in its totality, is not false; as noted above, the website clearly demarcates between categories of actions on the part of the Supreme Court and Plaintiff, admittedly, is accurately listed as a lawyer whose "Resignation" has been "Accepted." Simply put, this statement is not susceptible to a defamatory meaning. Most notably, the statement does not indicate or imply that Plaintiff had been disbarred from the Louisiana Supreme Court. Plaintiff's best argument appears to be that, somehow, Defendants are responsible for Google's search engine which, he claims, falsely suggested that he had been disbarred. But Plaintiff can prove no link between Defendants and Google. As a matter of law, therefore, the court believes that because

14

the actual statement about which Plaintiff complains was not defamatory, Plaintiff's

claim of defamation fails to state a claim upon which relief can be granted.

    2. <u>Section 1983</u>

    Plaintiff's section 1983 claim, in the court's opinion, is also subject to Rule

12(b)(6) dismissal.  According to the Supreme Court, while "[d]efamation, by itself, is a

tort actionable under the laws of most states," it "is not a constitutional deprivation."

*Siegert v. Gilley*, 500 U.S. 226, 234 (1991).  Thus, to prove his section 1983 claim,

Plaintiff must allege even more than the faulty defamation allegations just discussed;

he must assert what has been referred to in this circuit as "stigma-plus."  *See*, *e.g.*,

*Pendleton v. City of Haverhill*, 156 F.3d 57, 63 (1st Cir. 1998) ("[A] violation of

constitutional proportions under a 'stigma plus' theory exists only if, and to the extent

that, the opportunities lost are government benefices denied as a result of

governmental action."); *Brennan v. Hendrigan*, 888 F.2d 189, 196 (1st Cir. 1989)

(holding that the defamatory statements must be made in the course of dismissal from

employment); *Laureano-Agosto v. Garcia-Caraballo*, 731 F.2d 101, 104 (1st Cir. 1984)

(adopting the standard articulated in *Paul v. Davis*, 424 U.S. 693 (1976) *i.e.*, that in

employment defamation cases, the defamatory statement be made "in the course of the

termination of employment").  Plaintiff does nothing of the sort here.

    At most, Plaintiff suggests in his complaint that Defendants violated a "clearly

established constitutional property right and a liberty right to his reputation, honor,

good name, integrity and to gainful employment."  (Compl. ¶ 20.)  The Supreme Court

has held, however, that damage to reputation alone is insufficient to sustain a claim for

relief under section 1983 because reputation is neither "liberty" nor "property" protected

by the Due Process Clause. *Paul*, 424 U.S. at 701. In order to implicate due process,

the Court stated, the reputational injury must coincide with a more tangible interest,

such as employment. *Id.* at 697. Further, as to Plaintiff's "gainful employment"

assertion, the Court has also held that the impairment of "future employment prospects"

does not constitute a constitutional deprivation. *Siegert*, 500 U.S. at 234. At bottom,

because Plaintiff asserts nothing beyond his unsuccessful defamation allegations, the

court has little choice but to recommend that his section 1983 cause of action also be

dismissed for failing to state a claim upon which relief can be granted.[5]

IV. CONCLUSION

For the reasons described, the court recommends that Defendant's motion to

dismiss be ALLOWED.[6]

---

[5] To be sure, Plaintiff argues that the "stigma-plus" standard should not be used by this court because it is "obsolete. " He has not, however, cited any case indicating a retreat from that standard in this circuit or that, for some other reason, the stigma-plus ought not be utilized here.

[6] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy

DATED: February 1, 2010

                                       /s/   Kenneth P. Neiman
                                         KENNETH P. NEIMAN
                                         U.S. Magistrate Judge

---

thereof.